William O. GULLY, Movant–Appellant,

v.

STATE of Missouri, Respondent.

Nos. 24558, 24559.

Missouri Court of Appeals,
Southern District,
Division Two.

May 28, 2002.

Motion for Rehearing and Transfer to
Supreme Court Denied June 17, 2002.

Mark A. Grothoff, Columbia, movant–appellant.

Jeremiah w. (Jay) Nixon, Atty. Gen., Sara L. Trower, Asst. Atty. Gen., respondent.

NANCY STEFFEN RAHMEYER, Judge.

William O. Gully ("Movant") was convicted of two counts of driving while intoxicated ("DWI"), with each count tried before a separate jury. In this consolidated appeal, Movant appeals the denial of two Rule 29.15 [1] motions for post-conviction relief. Within the motions, which were consolidated for hearing purposes and addressed together by the motion court, Movant alleged that his trial counsel was ineffective for failing to call a particular witness at each of the trials. The motion court denied Movant's claims of ineffective assistance of counsel. We affirm.

On August 27, 1998, Movant was charged by information with two counts of DWI in violation of § 577.010. [2] Count I related to an incident that occurred on April 27, 1997, and Count II to an earlier incident on April 9, 1997. On Movant's motion, the counts were severed and tried separately. Movant was represented by the same counsel ("Counsel") at both trials.

Count II for the April 9, 1997 incident proceeded first to trial on December 8, 1998, and Officer Mark Sears of the Springfield Police Department was the sole witness to testify. Officer Sears testified that at approximately 1:30 a.m. on April 9, 1997, he encountered Movant and a woman arguing on the roadside along Kansas Expressway. During his fifteen to twenty-minute contact with the couple, Officer Sears noted several signs that Movant was intoxicated. According to Officer Sears, Movant's speech was slurred, he "almost reeked of alcohol," he stumbled and nearly fell as he walked toward the officer, his balance was unsteady, and his eyes were bloodshot and glassy. In addition, Movant informed Officer Sears that he had been drinking beer at a local bar that evening.

Based on the officer's determination that Movant's level of intoxication would preclude him from safely operating a motor vehicle, as well as the couple's decision not to share a cab, Officer Sears called separate cabs for them. Approximately twenty minutes later, while Officer Sears was in a nearby parking lot completing paperwork, he noticed Movant exit from a car that pulled up to the earlier scene, enter the vehicle that had been left at that scene, and begin to drive away. Officer Sears pulled over the vehicle and placed Movant under arrest. Officer Sears testified that, in addition to exhibiting the previously listed signs of intoxication, Movant failed the horizontal eye gaze nystagmus test. Officer Sears then transported Movant to the Springfield city jail, where Movant refused to submit to a chemical breath test.

The jury found Movant guilty of DWI, and he was sentenced as a prior and persistent offender to a term of seven years' imprisonment. Movant's conviction was affirmed following a direct appeal of the case.

In Movant's Rule 29.15 motion to vacate, set aside, or correct his judgment/sentence following the first trial, he alleged that he received ineffective assistance of counsel because Counsel failed to call Patricia Gully, Movant's mother, as an exculpatory witness. In particular, Movant claimed that Ms. Gully would have testified that he lived at her residence, that he was in and out of the residence several times on the evening in question, and that he arrived in a cab and borrowed $20 from her some-

---

1. All rule references are to Missouri Supreme Court Rules (2002), unless otherwise indicated.

2. All statutory references are to RSMo 2000, unless otherwise indicated.

time between midnight and 1:00 a.m. on that night. Movant further claimed that Ms. Gully would have testified that she had seen him intoxicated on several occasions and that he exhibited no signs of intoxication when she saw him that evening. Movant also alleged that his mother was willing and available to testify and that Movant informed Counsel of her exculpatory testimony, but that no one from Counsel's office ever contacted Ms. Gully.

Regarding calling Ms. Gully at the first trial, Counsel testified that Movant had not provided any information about his mother being a potential witness for this particular trial. Movant had mentioned his mother as a potential witness for an unrelated drug possession case, but Movant also specifically told Counsel that he did not want his mother involved in that case. Ms. Gully testified that Movant kept coming in the house that night, waking her up each time as she was attempting to sleep on the couch, and that he had woken her up to ask for money to pay for a cab at some point. She also testified that she had seen Movant intoxicated on many occasions, but on that particular night she saw no signs of slurred speech, glassy eyes, or inability to keep his balance. Ms. Gully testified that she had not been contacted by Counsel's office, but would have been willing and able to testify if someone had contacted her.

The second trial, which addressed Count I and the April 27, 1997 incident, took place in April of 1999. At this trial, Corporal Steve Kiser of the Springfield Police Department testified that at approximately 1:30 a.m. on April 27, 1997, he witnessed Movant driving erratically. After stopping Movant based on his suspicion that Movant might be intoxicated, Corporal Kiser testified that Movant immediately exited his vehicle, threw what appeared to be the keys to the vehicle over the top of the car,

appeared agitated, and walked toward Corporal Kiser in "an aggressive manner." Corporal Kiser repeatedly ordered Movant to get down on the ground, Movant finally complied, and he was handcuffed. Corporal Kiser testified that Movant appeared unsteady, emitted a strong odor of intoxicants, and exhibited slurred speech.

Officer Brad Boydston, a DWI enforcement officer for the Springfield Police Department, testified that he was dispatched to the scene and took over the investigation once he arrived. During Officer Boydston's contact with Movant, the officer noticed Movant's strong odor of intoxicants, slurred speech, and bloodshot and glassy eyes. Officer Boydston noticed the strong odor of intoxicants both on Movant's person and his breath. Movant also had difficulty standing still and maintaining his balance. When Officer Boydston requested that Movant take some field sobriety tests, Movant responded, "I ain't taking any —— test." Movant was subsequently placed under arrest for DWI and transported to the Springfield city jail. Officer Boydston also testified that during the transfer of Movant to the jail, the odor of intoxicants emitting from Movant was so strong that the officer had to roll down the windows. Once at the jail, Movant refused to submit to a chemical breath test.

Movant testified in his own defense. He testified that, prior to being stopped, he had been at the home of a friend, David Spicer, where the two of them had been smashing semi-empty beer cans to prepare them to be sold, but they had not been drinking that night. To explain his erratic driving, Movant testified that his vehicle had sustained some earlier damage and had the wrong-sized tire on the passenger side in front, which caused the car to pull to one side. Movant claimed that he told the officer about the crushing of the beer cans, but had not volunteered information

as to why his car veered while driving. His explanation for throwing the keys was that the action was meant to inconvenience the police, since "they were going to tow the car in and I wasn't going to get it out." Movant attributed his slurred speech to a sore throat, but admitted he had no explanation as to why the officer testified to noticing the odor of alcohol on Movant's breath. As for refusing to submit to field sobriety tests and a chemical breath test, Movant testified they he only refused to submit to the tests without a lawyer present.

The jury convicted Movant of DWI and he was sentenced as a prior and persistent offender to ten years' imprisonment, to run consecutively to the sentence from the first trial. Following a direct appeal, that conviction was affirmed.

In Movant's Rule 29.15 motion to vacate, set aside, or correct the judgment/sentence related to the second trial, he alleged that he received ineffective assistance of counsel because Counsel failed to call David Spicer as a witness. Movant claimed Spicer would have supported Movant's defense and corroborated Movant's testimony regarding the crushing of the beer cans and that they had not been drinking that night. Movant further alleged that Spicer was willing and available to testify and that on the day of the pre-trial hearing, Movant informed Counsel of Spicer's potential testimony.

In terms of calling Spicer at the second trial, Counsel testified that Movant indicated he had been with a friend on the night of the second DWI, but repeatedly refused to provide the name. According to Counsel, discussions were held with Movant during which he was told of the implications of not having this friend testify at the second trial. Counsel also noted that the police reports provided no information on Spicer. Movant admitted that he had nei-

ther seen nor spoken to Spicer since the night of his arrest and no one from Counsel's office ever contacted Spicer. Movant also testified that he had never asked anyone, including his mother or his friends, to try to locate Spicer, and that he did not know to what Spicer would have testified, if Spicer had testified at the second trial. Spicer did not testify at the motion hearing.

The motion court concluded that Movant's allegations of ineffective counsel, based on Counsel's failure to call Ms. Gully and Spicer as witnesses in the respective trials, were not supported by the record. As for Ms. Gully, the motion court concluded that she had minimal contact with Movant on the night in question and that Movant failed to show he was prejudiced by Counsel's failure to call her. In addition, the motion court found that Ms. Gully's testimony did not correspond well with that of Movant, which was potentially damaging to Movant's credibility; therefore, Counsel would not have been ineffective for failing to call Ms. Gully as a witness.

Regarding Spicer, the motion court determined that Movant failed to establish that he had advised Counsel of Spicer's existence, that the record strongly supported Counsel's contention that she had not been so advised by Movant. The motion court further concluded that Movant had failed to establish that Spicer was available and willing to testify or that his testimony would have provided a viable defense.

■ "Appellate review of the denial of a post-conviction motion is limited to a determination of whether the findings of fact and conclusions of law of the motion court are clearly erroneous." *Moss v. State*, 10 S.W.3d 508, 511 (Mo. banc 2000); *see also* Rule 29.15(k). "Findings and conclusions are clearly erroneous if, after a review of

the entire record, the [appellate] court is left with the definite and firm impression that a mistake has been made." *Moss,* 10 S.W.3d at 511.

To prevail on his claims of ineffective counsel, Movant must establish that (1) Counsel's conduct fell below an objective standard of reasonableness and (2) Counsel's deficient conduct or errors prejudiced Movant's case. *Cravens v. State,* 50 S.W.3d 290, 294 (Mo.App. S.D.2001); *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under an objective standard of reasonableness, Counsel must have "exercise[d] the customary skill and diligence of a reasonably competent attorney under similar circumstances." *Cravens,* 50 S.W.3d at 294. To establish his case was prejudiced, Movant must show "there is a reasonable probability that, but for [C]ounsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052.

■ Movant's burden is a heavy one, as both parts of what is often referred to as the *Strickland* test must be fulfilled; no relief may be granted if he fails on either prong. *Clayton v. State,* 63 S.W.3d 201, 206 (Mo. banc 2001). A decision not to call a witness to testify is presumed to be a decision of trial strategy and, thus, is virtually unchallengeable and will not support the overturning of a conviction on the basis of ineffective counsel unless proved otherwise. *See Leisure v. State,* 828 S.W.2d 872, 875 (Mo. banc 1992). "Reasonable choices of trial strategy, no matter how ill-fated they appear in hindsight, cannot serve as a basis for a claim of ineffective assistance." *Clayton,* 63 S.W.3d at 206. *Strickland* makes it clear that a reviewing court may consider the prejudice component first and stop the inquiry there, if

Movant makes an insufficient showing on that prong. *Strickland,* 466 U.S. at 697, 104 S.Ct. 2052.

■ We agree with the motion court that there was not a reasonable probability that, even if Movant's mother had testified, the outcome would had been different in the first trial. Movant and his mother's versions of the events differed and they only had minimal contact on that night. Further, Movant also informed Counsel that he did not want to involve his mother in a separate drug possession case; thus, it would be reasonable for Counsel to assume that request extended to Ms. Gully's involvement in any of Movant's pending cases. Given the relationship of the witness to Movant, Movant was not prejudiced by Counsel's failure to call Movant's mother to the stand. We find no error in the motion court's determination that Counsel was not ineffective for failing to call Movant's mother to testify at the first trial.

■ As far as the claim that Counsel was ineffective in failing to call Spicer, the record supports Counsel's contention that Movant never informed her of Spicer's identity or existence. Further, Movant testified at the hearing that he had not even spoken with Spicer since the night in question; thus, Movant did not establish Spicer's availability. In addition, Movant admitted that he could not say exactly to what Spicer would have testified. A counsel's actions are based on information supplied by a defendant and counsel "necessarily relies on [the] client to identify witnesses and is not required to be clairvoyant." *State v. Miller,* 935 S.W.2d 618, 625 (Mo.App. W.D.1996). The motion court did not err in denying Movant's claim of ineffective counsel based on

**656**

Counsel's failure to call Spicer as a witness at the second trial.

The judgment is affirmed.

GARRISON, P.J., and PREWITT, J., concur.